## FIRST NATIONAL BANK OF IONIA v. GILLAM.

Trusts and Trustees — Mortgages — Foreclosure — Applica
tion of Rents — Taxes.

Defendant was made trustee for creditors under first and second· mortgages, and was invested by separate agreement with title to, and charged with the duty of collecting, the rents and income of the property for the term of five years; it being provided that his right to such rents and income should cease if the property should be sooner sold under either mortgage. Each mortgage contained a clause reserving to the mortgagor the right to sell any of the property, and apply the proceeds to the indebtedness secured. The second mortgage having been foreclosed for nonpayment of interest, and the property bid in by the trustee for complainants (the beneficiaries therein), the latter disputed the right of the trustee thereafter to pay, out of the rents and income, taxes upon the property, assessed, not to him as trustee, but to the mortgagor, and filed a bill to compel him to pay over to them all moneys received subsequent to the foreclosure sale. *Held,* that complainants were entitled to the moneys; that the trustee's right to make payment of taxes under the special agreement was terminated by the sale.

Appeal from Ingham; Person, J. Submitted February 2, 1900. Decided February 20, 1900.

Bill by the First National Bank of Ionia and others against George F. Gillam to compel the payment of rents collected by him as trustee. From a decree for complainants, defendant appeals. Affirmed.

*V. H. & H. H. Smith* and *A. F. & F. M. Freeman,* for complainants.

*Thomas, Cummins & Nichols,* for defendant.

Moore, J. On September 19, 1893, Orlando M. Barnes and wife executed to the defendant in this case, as trustee

for complainants, a certain mortgage covering lands therein described. This mortgage was made subject to another mortgage executed by the same parties to the defendant in the case as trustee for certain other creditors. This latter mortgage was given on the 23d day of August, 1893. On September 19, 1893, Mr. Barnes and Mr. Gillam also made an instrument containing the following provisions:

"Now, therefore, in order to better secure the payment of all said mortgages, and render the last-made mortgage a better security, this instrument witnesseth:

"*First.* That the said Orlando M. Barnes has appointed the said George F. Gillam his agent to take the charge and care of the real estate embraced in said last-made mortgage, situate in the city of Lansing and in the township of Lansing, and has authorized, and does hereby authorize, him, the said Gillam, to rent the said property, so far as the same can be rented, upon such terms as he may deem just and fair. Such renting may be in the name of said Gillam as trustee, or in the name of Orlando M. Barnes, as may be deemed best.

"*Second.* The said Orlando M. Barnes has transferred, and does hereby transfer, to said George F. Gillam, in trust, all the rents and income that may accrue on all said real estate for the period of five years from this date, or until the said mortgages are paid, if sooner paid. But if any of the said real estate is sold in the meantime under said mortgages, or any of them, or if any is sold by the parties hereto in order to make payments upon the mortgage debt, then the right to rents and income upon said property ceases. The said Gillam is authorized and empowered to collect all rents and income that may become due on said real estate, whether such real estate be now rented or be hereafter rented."

Both the mortgage of August 23d and the mortgage of September 19th contained this clause:

"It is deemed expedient that any of the said lands embraced in this mortgage be sold whenever a fair and satisfactory price can be obtained therefor, before the end of the said time limited. It is therefore expressly agreed that, whenever the parties of the first part can effect a

sale of any of the lands at a price and on terms satisfactory
to both parties hereto, the said party of the second part
shall release the lands so sold and contracted to be sold
from this mortgage; the money arising from such sale,
after paying the cost of making the same, and any liens
that may be upon such lands prior to this mortgage, to be
paid *pro rata* on the indebtedness hereby and herein
secured."

It will be remembered that Mr. Gillam was acting
as trustee for the beneficiaries under the mortgage of
August 23d, among which beneficiaries was the Central
Michigan Savings Bank, at whose request this appeal
is taken. The complainants in this case are the creditors
named in the second Gillam mortgage. In 1896 Mr.
Gillam, as trustee for the complainants, filed a bill to
foreclose their mortgage for nonpayment of interest; and
on July 19, 1897, the premises were bid in by Mr. Gillam,
as trustee for complainants, for the sum of $605. Mr.
Gillam still continued in possession of the premises, and
collected the rents and income, after the foreclosure sale,
and applied them to the payment of taxes, as usual, until the
following spring of 1898, when his right under the assign-
ment to pay taxes on the premises was denied by com-
plainants; they claiming the right to the rents and income
from the property from the date of their deed, to wit,
July 19, 1897. This bill of complaint was filed to compel
the defendant, as trustee for complainants, to pay to them
money which he had collected as rents and income from
said property from the said 19th day of July, 1897. It
was conceded upon the hearing that the amount in Mr.
Gillam's hands as rents and profits from said property,
after deducting the credits to which said defendant was
entitled, was the sum of $2,433.36, all of which had
accrued since July 19, 1897. It was admitted that the
amount of taxes assessed against the property on the July
roll for 1898 was the sum of $1,264.49, and for the entire
year of 1898 the sum of $2,597.17. At the time the July
taxes referred to became due and payable, the defendant,
Mr. Gillam, had in his hands sufficient funds with which

to pay the same, and would have paid the same had it not been for the doubt in his mind as to whether he had a right to do so. From a decree requiring the trustee to pay over all the money in his hands to the complainants, an appeal is taken, nominally by the trustee, but really by the Central Michigan Savings Bank.

A question is raised here about the right of the Central Michigan Savings Bank to intervene, as it is not a party to the record. In our view of the case, it is not necessary to discuss that question. It is very evident this is a contest between the beneficiaries under the respective mortgages to see who shall be compelled to pay the taxes of 1898. The taxes were not assessed to the trustee, but were assessed to Orlando M. Barnes. The trustee was notified by the complainants not to pay them, and he has not done so. It is strongly urged here that whether Mr. Gillam received the rents and profits as trustee under the instrument of September 19, 1893, or whether he received them by reason of having bid the lands in for the complainants at the mortgage foreclosure sale, the rents and profits should be used to pay the taxes upon the land. The learned circuit judge filed a written opinion, in which he expressed himself as follows:

"The agreement by which Mr. Barnes turned over the rents to Mr. Gillam in trust for payment of taxes and other expenses expired under the sale of the last-given mortgage. Mr. Gillam's right to possession under that trust then terminated, and his right to possession as purchaser in trust at the sale under the third mortgage began. He will be held to have been in possession under the sale as such purchaser, and in that capacity to have received the rents. The beneficiaries under the first Gillam mortgage [second mortgage] had no interest in these proceedings by virtue of the said agreement. If it is the duty of Mr. Gillam, as owner of the equity of redemption through his purchase, to pay the taxes, yet the only way for the beneficiaries under the first Gillam mortgage to enforce that duty is to themselves pay the taxes, and add the amount to their security. The beneficiaries under the first Gillam mortgage have, therefore, no legal interest in

the proceedings. The State is not interested in these proceedings. The lands were not assessed to Mr. Gillam, and the taxes never became a personal charge against him. The lands have been returned, and the State has no claims upon the rents in Mr. Gillam's hands. So far as Mr. Gillam did pay taxes, he paid them rightfully. It was his duty, in the interest of the beneficiaries under the third mortgage, to pay those taxes,— at least, until they had expressed their wishes against payment. But, as to the other taxes due and unpaid, Mr. Gillam is under no duty to make payment in the interest of the beneficiaries under the third mortgage. They have forbidden such payment. He is under no duty to make payment in the interest of the State, for the taxes were not assessed to him personally. He is under no duty as to the prior mortgagees, as we have before stated. Mr. Gillam therefore should account to the beneficiaries under the third mortgage for the rents he has received since the sale under that mortgage, and he should be credited with his proper expenses, including such taxes as he has paid, and a reasonable compensation."

The language of the written instrument under which Mr. Gillam was authorized to collect the rents and profits is not ambiguous in its terms. When the complainants became the owners of the land by virtue of the foreclosure sale, they became entitled to the rents and profits. We are satisfied that the circuit judge made a right disposition of the case.

The decree is affirmed.

The other Justices concurred.